[763 NYS2d 249]

JULIE COLYER, Appellant, v JOHN COLYER, Respondent.

First Department, July 24, 2003

## APPEARANCES OF COUNSEL

*Larry M. Carlin* of counsel *(Carlin & Rothstein,* attorneys), for appellant.

*Benjamin J. Golub* of counsel *(Rogovin Golub Bernstein & Wexler, LLP,* attorneys), for defendant.

## OPINION OF THE COURT

SULLIVAN, J.

Among the issues presented on this appeal from three orders arising out of litigation over the parties' separation agreement is whether the agreement provided the husband with broader grounds to modify his child support obligation than are otherwise available to warrant such relief.

The parties, married on August 5, 1989, entered into a January 17, 1994 separation agreement, which was incorporated but not merged into a May 3, 1994 judgment of divorce. There is one child of the marriage, Victoria. As relevant to the appeal, the agreement granted the wife sole and exclusive custody of the child and required the husband under article III, paragraph 2 (A) (i), to pay monthly child support of $1,300 directly to the wife commencing January 1, 1994, as well as to pay for the child's health insurance and college education.

Under article III, paragraph 2 (B), the parties acknowledged the existence of two accounts having a balance of approximately $40,000, which had been established as the "[c]ustodial [a]ccount" for the child's benefit with the wife as the sole custodian. The agreement provided that commencing January 1, 1994, she could withdraw $500 monthly from the custodial account for the support of the child. In the event of an insufficiency of funds to enable the wife to withdraw $500 per month from the custodial account, the husband was required to pay the wife directly the sum of $500 in addition to the requisite $1,300 for

the child's support. Thus, the agreement set the husband's support obligation at $1,800 per month, payable $1,300 in direct support and $500 from the custodial account. Once the account was exhausted, the husband was obligated to make the $500 payment directly to the wife.

With an approximate $40,000 in the custodial account, the separation agreement provided for 80 monthly withdrawals of $500 each, at the end of which two events were contemplated: the husband's receipt of the next installment, approximately $180,000, from his inheritance; and the husband's right to make any application he deemed appropriate with respect to his child support obligation. As to the latter, the separation agreement, insofar as is relevant, provided:

> "[T]he Husband agrees that he will not make any application for a period of eighty (80) months from the date of this Agreement to modify his [child] support obligation pursuant to this Article III. Thereafter, * * * the Husband shall be permitted to make any application he deems appropriate with respect to his child support obligation." (Art III ¶ 3 [A].)

Paragraph 5 of article III of the separation agreement contained an acknowledgment that the parties had been advised of the provisions of Domestic Relations Law § 240 (1-b) and Family Court Act § 413, the application of which could affect the amount of child support the husband would be required to pay, and that they reviewed the provisions and understood them. The husband and wife also acknowledged that their incomes were $15,000 and $32,321, respectively. The paragraph also acknowledged that if the Child Support Standards Act (CSSA) were to apply and without any consideration of the wife's income the husband's monthly support obligation for the child would be approximately $100. Paragraph 5 further provided "[t]he reason [sic] the parties have agreed to deviate from the amount of support that would be required under the CSSA are as follows: (a) [t]he terms of the parties' pre-nuptial agreement concerning child support[;] (b) [t]he waiver of maintenance by the [w]ife [;and] (c) [t]he financial circumstances of each of the parties."

Pursuant to article XII, in which the parties provided for equitable distribution of their marital assets, the husband agreed to pay the wife $47,800 simultaneously with the execution of the agreement. The husband agreed to pay the wife $25,000 by November 22, 2000 and that upon his failure to pay that

amount from a trust distribution due on November 20, 2000, pursuant to article XII, paragraph 2 (B) (ii), the trustees were to pay that amount directly to the wife from the trust. Finally, the agreement provided that in the event of default, the nondefaulting party was required to give written notice thereof by certified mail. The agreement provided that "the defaulting party agrees to indemnify the other party against and to reimburse that party for any and all expenses, costs and attorney's fees resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this [a]greement." (Art XIV ¶ 1.)

On November 10, 2000, the wife's attorney wrote to the husband's attorney and the trustee requesting confirmation that the trustee would comply with his obligation pursuant to article XII, paragraph 2 (B) (ii) with respect to the $25,000 payment from the trust. The parties ultimately agreed that the $25,000 would be retained in trust pending receipt of an order from the court. The wife, thereafter, on January 30, 2001, sought an order, inter alia, compelling the trustee to turn over to her out of the trust $25,000 plus 9% interest from November 22, 2000. The husband cross-moved, inter alia, pursuant to Domestic Relations Law § 236 (B) (9) (b), for a reduction of his child support obligation to $200 monthly.[1]

While these motions were sub judice, on March 17, 2001, the child, now age 13, moved into her father's residence in Canada. In a supplemental affidavit, the husband further informed the court that the parties had agreed that Victoria would live with him, his current wife and infant daughter because the wife "was, essentially, no longer in a position to control our daughter."[2] Due to these changed circumstances in the custody arrangement, the motion court held in abeyance the husband's application for a downward modification of his child support obligation.

In the first order on appeal, dated May 25, 2001, the court directed that the husband "pay or caused [sic] to be paid $25,000.00 to [the wife] within thirty days of this order or shall cause the Trust of which he is a beneficiary to provide legal

---

1. While the husband did not object to the $25,000 request, he asked the court to direct that the funds be placed in an appropriate escrow account or trust fund to be used solely for the child's college education.

2. The parties disagree as to whether the change in custody was temporary. The child resided with the husband until the end of June when she left for summer camp. She returned to the wife's custody at the end of the summer.

proof of why said money cannot be released from the[t]rust at this time." The court further directed that on the failure of the husband or trust, as the case may be, to comply with the provisions of the order, the wife could settle an order for a $25,000 judgment with statutory interest retroactive to November 22, 2000. On June 25, 2001, the husband's attorney sent the wife's attorney a check in the sum of $25,000, advising that the wife "is not entitled to any additional interest, costs, disbursements or counsel fees."

In the second order on appeal, dated October 31, 2001, the court granted the husband's cross motion for a downward modification of his direct child support obligation, reducing it from $1,300 to $354 per month. In so ruling, the court rejected the wife's reliance on Domestic Relations Law § 236 (B) (9) (b), which, for a downward modification, the court noted, requires a showing of "financial hardship or a change in circumstances." The court held that the separation agreement, the validity of which neither party challenged, clearly granted the husband the right to seek modification of his child support obligation on broader grounds than might be allowed under the Domestic Relations Law. It justified this conclusion "in light of the parties' original decision to deviate from the CSSA guidelines to the benefit of [the wife]" and that, given the husband's income, the guidelines would have provided for a much lower direct child support obligation on his part. It found the separation agreement's provision allowing the husband to seek a modification of his support obligation to be proper since, citing *Matter of DeAngelo v Doherty* (208 AD2d 1012, 1014 [1994]), the child's right to receive adequate support is not adversely affected. Finally, it noted that the decision to allow modification was still a matter for the court and subject to consideration of the child's needs.

Without setting forth the standard to be applied in determining whether a modification was warranted and conceding the incompleteness of the financial information provided by each side, the court, nevertheless, granted modification and applied the CSSA guidelines. It noted that the husband's gross income was $39,600 (assumed to be $25,000 U.S.) and while he was the beneficiary of a trust, its corpus was concededly less than $200,000 and that the husband claimed that he received income of only $100 monthly. The court also noted the husband's claim that his expenses exceeded his income and that he had to borrow from his current wife and his family. The court, however, acknowledged that the husband failed to

provide any "loan documents" and to indicate whether his current wife earns income and whether his new family depends on his income to meet expenses. The court observed that the wife had not provided her gross income, although she claimed after-tax income of $51,395 from her business. She listed $1,467 in interest or dividend income. The court noted that the wife's expenses had probably changed, most notably the child's education costs, in light of her move to the suburbs.

The court decided that, "[i]n part to compensate for the [wife's] failure to provide gross income figures," it would not take into account the husband's trust in determining his child support obligation. It found the husband's income for CSSA purposes to be $25,000 and the wife's to be $52,700 and, applying the guidelines, fixed the husband's support obligation at $354 per month. It found that no deviation was required because, in addition to the direct support payment, the wife draws $500 monthly from the custodial account for the child's benefit, and because, in accordance with the separation agreement, the husband continues to be obligated to pay the child's medical and dental costs, as well as to maintain life insurance, and will be obligated to pay her college and postgraduate costs. The court rejected the husband's claim for an award of counsel fees, noting, "The [a]greement did not require the [wife] to consent to a reduction of the direct child support; rather, the [a]greement gave [the husband] the right to seek a modification from the court." The wife sought leave to reargue the court's two orders. In the third order on appeal, dated March 14, 2002, the court denied reargument. The wife appeals from each of the three orders.

Domestic Relations Law § 236 (B) (9) (b), pursuant to which the husband cross-moved for a modification of his support obligation, in pertinent part, provides, "Upon application by either party, the court may * * * modify any prior order or judgment as to * * * child support, upon a showing of * * * a substantial change in circumstance." The statute, as its wording makes clear, reflects the standard when a party seeks to modify a prior order or judgment as to child support. Where, however, modification of a support obligation contained in a separation agreement incorporated but not merged in a judgment of divorce is sought, the proving party must show that the agreement was not fair and equitable when entered into or that an "unanticipated and unreasonable change in circumstances has occurred resulting in a concomitant need" (*Merl v Merl*, 67 NY2d 359, 362 [1986]; *see Matter of Brescia v Fitts*, 56

NY2d 132, 138 [1982]). It is well settled that the party seeking downward modification has the burden of proof (see *Klapper v Klapper*, 204 AD2d 518 [1994]).

Although the husband moved under the statute, he was not seeking modification of an order of support based on a substantial change of circumstances but, rather, of a provision of the separation agreement on the grounds that his support obligation was excessive from the outset and that the separation agreement gave him a right to seek modification for any reason after the passage of 80 months from its execution.

While not necessarily agreeing with this interpretation of the separation agreement, the motion court held that the husband could seek a downward modification on broader grounds than those set forth in the Domestic Relations Law, that is, without a showing of a substantial change in circumstances. On appeal, the wife argues that the motion court erred in holding that the separation agreement provided a diminished standard from that set forth in the statute, and further argues that in his application the husband failed to make the requisite statutory showing of a substantial change in circumstances to warrant the relief granted to him. We agree that the separation agreement did not afford a diminished standard for modifying a contractual support obligation contained in a separation agreement incorporated but not merged in a judgment of divorce. The legal standard, however, as noted, is established by case law, not statutory provision as reflected in Domestic Relations Law § 236 (B) (9) (b) and Family Court Act § 461 (b).

It is well settled that parties to a separation agreement may contractually provide for a support modification on a lesser standard than legally required. Once set forth in the agreement, the parties will be held to that standard and any application to modify the support obligation will be determined on the basis of the agreed-upon standard (*Matter of Langlitz v Ochse*, 268 AD2d 865 [2000]; *Roshevsky v Roshevsky*, 267 AD2d 293 [1999]; *Matter of Zenz v Zenz*, 260 AD2d 494 [1999]; *Sofia v Sofia*, 162 AD2d 594 [1990]). The law is equally clear that, absent a clear intention to the contrary, the legal standard for modification may not be circumvented (*Zenz, supra*). In *Langlitz* (*supra*), the Court stated the law as follows:

> "It is well settled that where * * * a party seeks to modify the child support provisions of a separation agreement that has been incorporated but not

merged in a judgment of divorce, he or she bears the burden of demonstrating 'that the agreement was unfair or inequitable when entered into *or* that an unanticipated and unreasonable change of circumstances has occurred resulting in a concomitant increased need *or* that the needs of the children are not being adequately met' [citations omitted]. Absent such a showing, an application for [a] * * * modification of child support will not be granted unless the separation agreement itself expressly provides for modification upon a lesser burden of proof" (*id.* at 865-866).

Of course, while the parties may provide for their own standard for seeking modification of the separation agreement's child support provisions, such lesser standard will be upheld only if the child's right to adequate support will not be adversely affected (*Matter of DeAngelo v Doherty*, 208 AD2d at 1014). In *Putnick v Rockcastle* (244 AD2d 839, 840 [1997]), the Third Department found that the provisions of the separation agreement, which set forth detailed and specific conditions that would justify modification of the support obligation, reflected an intent to apply a lesser burden of proof in the event either party sought modification. In *Matter of Strack v Strack* (225 AD2d 872 [1996]), the Court rejected the argument of a wife, seeking an upward modification, that the separation agreement provided for a lesser burden of proof. The Court observed, "Although the separation agreement recites that the parties may seek modification of the child support provisions contained therein based upon a 'proper showing of changed circumstances', such language merely reflects an acknowledgment by the parties that if a modification proceeding is commenced, the party seeking modification must make the 'proper', appropriate or requisite showing of a change in circumstances in order to prevail; here, that required showing consisted of proof that the separation agreement was unfair when entered into, that there had been an unanticipated and unreasonable change in circumstances, or that the child's needs were not being met" (*id.* at 873-874 n).

As the cited cases make clear, absent the parties' expression of a clear intention to dispense with the legal standard for modification of the support obligation or to substitute another specified standard, the legal standard applies. The husband argues that the provision that he could make "any application he deems appropriate" after 80 months is equivalent to a right

to modification for any reason after the expiration of that period of time. In fact, all that the provision does is to prohibit the husband from making a modification application for the 80-month period following execution of the separation agreement, after which his right to make "any application he deems appropriate" was reinstated.

.The argument that the absence of language in the separation agreement requiring the husband to show changed circumstances demonstrates a clear intent to dispense with that requirement runs counter to prevailing precedent. This agreement fails to set forth an alternative to the requisite standard. The right to make "any application [the husband] deems appropriate" does not set forth a standard; it merely offers an option.

That the parties acknowledged in article III, paragraph 5 of the separation agreement that the husband would have been required to pay only $100 per month under the CSSA guidelines does not give rise, as the motion court held, to an interpretation that the agreement provided him with the right to seek modification of his child support obligation on broader grounds than those legally accepted. The court's reasoning was flawed. Had the recital, required under Domestic Relations Law § 240 (1-b) (h), not been made, the agreement would have been declared void (*Blaikie v Mortner*, 274 AD2d 95 [2000]). The parties' acknowledgment of their rights under the CSSA is therefore not a circumstance from which the conclusion can be drawn that the husband agreed to pay excessive child support for an 80-month period in consideration of the right to seek a downward modification thereafter on a showing less than legally required.

Moreover, in referring to article III, paragraph 5, the court, in its analysis, failed to take into account the parties' stated reason for deviating from the CSSA guidelines, namely, the terms of the parties' prenuptial agreement regarding child support, the wife's waiver of maintenance and the parties' respective financial circumstances. Thus, we find that the motion court erred in concluding that the separation agreement gave the husband broader rights than he would otherwise have to seek a downward modification of his support obligation.

In considering the downward modification application under the proper standard, we find that since the husband did not attempt to establish a substantial change of circumstances and the record fails to show an unanticipated and unreasonable change of circumstances, there is no basis on those grounds to

grant a modification. In his application, the husband did contend that at the time he entered into the separation agreement it was clear that he could not possibly afford to pay $1,300 per month in child support unless he earned more income. However, other than to claim now, without documentary support, that he has had to borrow from family members to pay child support, he does not explain, nor does the record disclose, how he was able to pay $1,300 monthly on a salary of only $15,000. Not only has the husband failed to show an adverse change in his financial circumstances, the record discloses that his financial circumstances have actually improved. His annual income has increased by $10,000 and, simultaneously with his application to modify his child support obligation, he became the recipient of a $110,000 distribution of a trust account.

On appeal, the husband argues that the agreement was unfair and inequitable when entered into, a claim he never directly asserted in his cross motion. The fact that the parties themselves had indicated in the separation agreement that the application of CSSA standards would have resulted in a much lower direct support obligation lends support to that argument. The husband points out that the amount he is required to pay ($1,800 per month plus medical, dental and insurance costs) is $6,600 a year in excess of his gross income. What the husband fails to mention, however, is that the motion court noted the failure of either party to seek to overturn the agreement or to argue that it offended public policy. Since the husband's claim as to the unfairness of the agreement was never advanced before the motion court, it may not be raised for the first time on appeal.

In any event, while the husband's agreement to pay 10 times the amount of child support he would have been required to pay under CSSA standards may, at first blush, suggest that the agreement was unfair and inequitable when made, this fact is, in and of itself, insufficient to justify reduction of the support obligation. The husband has offered the following explanation for his seemingly inexplicable agreement to make direct child support payments of $1,300 per month although he earned only $15,000 a year:

> "The reason for my signing the Agreement, and the basis of the foregoing child support provision, was that at the time of my divorce I was the beneficiary of a trust from my grandmother. Because of the confusion surrounding my finances the initial *pen-*

*dente lite* decision made an award of child support based upon the expenditure of principal from that trust and the sale of trust principal, to support defendant's [*sic*] extravagant lifestyle, and not upon the income from the trust.

"[ ] Despite efforts to attempt to change the Court's mind, I was unable to do so which resulted (against my attorney's advice) in my entering into the Agreement for me to pay the $1,300 monthly amount for eighty (80) months, plus insurance and unreimbursed medical expenses and after the ·80 months, I would be then entitled to make application for a downward modification. I obviously would never have entered into the Separation Agreement had I not had the right to modify it, for any reason, after 80 months."

Since the agreement itself provided other objective reasons for the parties' deviation from the CSSA standards, the husband's explanation does not establish that the agreement was unfair and inequitable when executed. In the circumstances, however, our reversal of the motion court's modification of the support obligation is without prejudice to a future application, if the husband be so advised, on a showing that the support provision was unfair and inequitable at the time it was made or that there has been an unanticipated and substantial change of circumstances.

On her appeal from the first order, the wife contends that the court erred as a matter of law in failing to award her interest from November 22, 2000 on the $25,000 that the husband was directed to pay. The wife relies, inter alia, on CPLR 5001 (a), which provides, "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion."

While the wife argues that she is entitled to interest from November 22, 2000 because the husband breached the separation agreement provision requiring that such payment be made by that date, her application was not based primarily on the husband's breach of contract. It was based on article XII, paragraph 2 (B) (ii), requiring the trustees, in the event the husband did not pay the sum of $25,000 to the wife by

November 22, 2000, to pay that amount "directly to her from the trust and * * * the trustees shall be required to retain said twenty-five thousand ($25,000.00) dollars in trust until payment is made to the [w]ife." Since the wife sought to compel the trustee to pay the $25,000 as to the payment of which the husband was in default, the motion court reasonably concluded that interest was warranted only if the wife was compelled to settle an order for a money judgment in the sum of $25,000. As matters turned out, the trustee made the required $25,000 payment.

The wife also sought counsel fees from the husband with respect to her application to compel the trustee to pay her the $25,000 due, her defense of the husband's application for a downward modification, as well as his application for custody and child support while the child resided with him, and her application for reargument. Each of these requests was denied. Pursuant to article XIV, paragraph 1, in the event of a default with respect to a payment to be made under the separation agreement, the defaulting party is to indemnify the other party and to reimburse that party for any and all expenses, costs and attorney's fees incurred in enforcing the agreement. In moving to compel the trustee to turn over $25,000 to her, the wife sought $3,000 in counsel fees. The husband's current argument that the wife failed to comply with the requirement of sending a written notice by certified mail specifying the default was never raised before the motion court and is unpreserved for review. The court erred in failing to grant the wife's request for counsel fees, to which she was clearly entitled, in connection with her application to enforce payment of the $25,000 in equitable distribution.

The court's denial of the remainder of the wife's requests for counsel fees was proper, however. The wife argues that she should have been awarded counsel fees in defending against the husband's applications because they were entirely unnecessary and retaliatory. There is, however, no basis in this record to find the husband's actions retaliatory. As to his application for custody and suspension of child support during the period that Victoria resided with the husband, the wife argues that the parties knew that such residency was temporary. As the husband pointed out to the court, however, the duration of the child's stay with him had not been clear when he made his motion and he required court orders with respect to custody to enroll his daughter in school and to make arrangements for her medical and dental care in Canada.

The wife's claim that in denying her counsel fees the court failed to review the relative financial circumstances of the parties, the other circumstances of the case and the merits of the parties' respective positions, as required (see DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]), is based on a faulty factual premise. The wife's characterization of the husband as the "beneficiary of considerable family wealth" is strikingly exaggerated. She could point only to the fact that the husband was the beneficiary of a $180,000 trust fund, which, because of unresolved adjustments, distributed only $110,000 to him. On the other hand, the wife earned at least double the husband's income.

We have examined the other contentions for affirmative relief and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Laura Drager, J.), entered on or about June 1, 2001, which, inter alia, granted plaintiff's motion for the payment of $25,000 due as equitable distribution but failed to award interest unconditionally and counsel fees, as requested, should be modified, on the law, to grant plaintiff's application for counsel fees and, except as thus modified, affirmed, without costs or disbursements. Order, same court and Justice, entered on or about November 8, 2001, which, insofar as appealed from as limited by the briefs, granted defendant's cross motion for a downward modification of his child support obligation, should be reversed, on the law, without costs or disbursements, and the cross motion denied. Appeal from order, same court and Justice, entered March 22, 2002, which denied plaintiff's motion for reargument, should be dismissed, without costs or disbursements, as taken from a nonappealable order.

NARDELLI, J.P., ANDRIAS and ROSENBERGER, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 1, 2001, modified, on the law, to grant plaintiff's application for counsel fees and, except as thus modified, affirmed, without costs or disbursements. Order, same court, entered on or about November 8, 2001, reversed, on the law, without costs or disbursements, and defendant's cross motion for a downward modification of child support denied. Appeal from order, same court, entered on or about March 22, 2002, dismissed, without costs and disbursements, as taken from a nonappealable order.