[821 NYS2d 155]

JUDITH L. LONSDALE, Also Known as JUDITH L. MCEWEN, Respondent, v MARK MCEWEN, Appellant.

First Department, August 24, 2006

### APPEARANCES OF COUNSEL

*Sidney Siller*, New York City (*Brian J. Isaac* of counsel), for appellant.

*Wolf, Block, Schorr and Solis-Cohen, LLP,* New York City (*Charles B. Law* of counsel), for respondent.

### OPINION OF THE COURT

McGUIRE, J.

The undisputed facts establish that defendant lost his high-paying position in October of 2002. When the separation agreement was entered into in December of 2001, defendant's annual salary in that position was $1.3 million. In 2003, defendant was unemployed except for occasional jobs he was able to obtain, but received some $77,527 in income from a variety of sources (including capital gains, dividends, interest and pension payments, as well as earnings from the employment he obtained). He remained unemployed for most of 2004, but received some $34,750 in income over the first seven months of the year. As a result of the new employment he finally was able to secure in Florida, he expected to earn an additional $38,000 in the final months of 2004. Defendant expected to earn $200,000 in salary over the first year in his new job, with increases of $15,000 and $10,000 in the second and third years. That defendant did not voluntarily lose his high-paying position in October of 2002 is undisputed; nor is there any basis for doubting that defendant thereafter diligently sought new employment.

Accordingly, and indisputably, defendant was entitled under the agreement to reductions in his support obligations. Specifically, the agreement provides that in the event of an involuntary substantial decrease in defendant's annual income to $600,000 or less, his annual, basic child support obligation would be $33,600 (payable in equal monthly installments) rather than $48,000. The agreement further provides for an "adjustment" of his nonbasic child support obligations if his income were to decrease by more than 50% of the amount of income he earned in 2000 (which apparently was in excess of $1 million). As discussed below, defendant's nonbasic child support obligations are substantial.

In support of his motion for a downward modification of his child support obligations, defendant relied on, inter alia, the

loss of his high-paying position, the periods of unemployment and reduced income in 2003 and 2004 and the need to provide for his twin sons, born in September of 2003, following his remarriage in April of 2002. In addition, defendant alleged both that plaintiff, as an attorney for a major pharmaceutical company, likely earned more than he would in his new position, and that her financial assets had increased significantly while his had decreased significantly since the agreement was entered into in December of 2001.

In voting to affirm Supreme Court's denial of defendant's motion, the dissent states that "the loss of [the] long-standing lucrative position" defendant held "affords no basis for the relief" he seeks because "[t]hat circumstance . . . was specifically anticipated and addressed in the [separation] agreement." This rationale, however, is not alone sufficient to warrant denial of defendant's motion. After all, if defendant either had failed to secure new employment or secured a new position that paid an annual salary less than the total amount of his annual support obligations, defendant could not rationally be denied relief on this ground. Presumably, albeit implicitly, the dissent believes that the motion properly was denied both because the loss of defendant's lucrative position "was specifically anticipated and addressed in the agreement" *and* because his salary did not decrease so substantially as to make it unreasonable for him to pay $33,600 annually in basic child support and 50% of all "add-on expenses."

In any event, the flaw in the dissent's reasoning is not its conclusion that the loss of his lucrative position was anticipated. With that I have no quarrel, and observe only that nothing at all follows from this conclusion. The further conclusion that the loss of that position was "specifically . . . addressed in the agreement" avoids the only relevant issue: whether the particular consequences that defendant actually sustained on account of the loss of that position were "specifically . . . addressed in the agreement." Obviously, the agreement cannot sensibly be read to have addressed all possible consequences flowing from the loss of that position. Defendant was without any full-time job for nearly two years and earned next to nothing during this period. He surely did not anticipate that, and it cannot plausibly be maintained that this contingency was "specifically . . . ad-

dressed in the agreement."[1] Nor does the dissent provide any reason for concluding that the agreement "specifically anticipated and addressed" the less substantial but nonetheless drastic consequence of an 84% salary reduction (from $1.3 million to $200,000).

The only reasonable conclusion to be drawn is the obvious one: the parties to the agreement anticipated the loss of defendant's lucrative position but neither anticipated nor addressed either a prolonged period of unemployment or so huge a reduction in salary. To be sure, the agreement provides for a reduction in annual child support "in the event the Husband suffers an involuntary substantial decrease in [his] income, as defined, so that such income is $600,000 *or less*" (emphasis added). But the phrase "or less" is too slender a peg upon which to hang the ponderous conclusion that the parties "specifically anticipated and addressed" all the potential consequences of the loss of defendant's position.

Moreover, as the very cases the dissent cites make clear, the enforcement of child support provisions in a separation agreement is not determined exclusively in accordance with principles of contract law and interpretation (*see Merl v Merl,* 67 NY2d 359, 362 [1986] ["We have . . . acknowledged a court's power to modify decrees or orders in respect to child support provisions deriving from a separation agreement incorporated but not merged therein upon a showing that the agreement was not fair and equitable when entered into, or that an unanticipated and unreasonable change in circumstances has occurred resulting in a concomitant need"]; *Matter of Boden v Boden,* 42 NY2d 210, 213 [1977] [same]).

If the parties did not anticipate and address the protracted period of unemployment and huge decrease in salary that defendant suffered, the dissent certainly is wrong in affirming the denial of his motion without a hearing. The Second Department's decision in *Miller v Miller* (18 AD3d 629 [2005]) is particularly instructive. There, the defendant husband moved for a downward modification of his child support obligations "based on an alleged 50% reduction in his earning capacity . . .

---

1. Of defendant's total "income" in 2003 of $77,527, only about $43,500 represented earnings from the episodic employment defendant managed to obtain. Even putting that aside, defendant's total income in 2003 was about 94% less than his salary in 2002. Suffice it to say, it makes no sense to suppose that a person who anticipated such a huge decrease in salary nonetheless would commit to making child support payments that exceed his or her salary.

and increased expenses incurred as a consequence of having one of the parties' two children, their son, reside with him while still being obligated to pay the plaintiff [wife] child support for that child" (*id.* at 630). Precisely because these contentions made out "a prima facie showing of extreme hardship," the Court held that Supreme Court had erred in denying the husband's motion without a hearing (*id.*).

Of course, defendant's 84% salary reduction is far greater than the substantial reduction that supported the motion in *Miller,* and defendant, unlike the husband in *Miller,* was without any steady employment for nearly two years. Under these circumstances, Supreme Court erred as well in brushing aside defendant's claim of a "concomitant need" (*Merl,* 67 NY2d at 362) for a downward modification. First, in concluding that "payment of $2,800 per month is a reasonable child support amount" "given the fact that [defendant] is now earning $200,000 annually," Supreme Court ignored the substantial amounts of nonbasic child support payments defendant was obligated to make.[2] Supreme Court, moreover, appears not to have considered the after-tax burden of defendant's obligations. Assuming a 30% tax rate, the basic child support payments alone would consume nearly 25% of defendant's salary on an after-tax basis; between a third and 40% of defendant's after-tax salary would be consumed by child support obligations to the extent his nonbasic support payments ranged from $10,000 to $20,000.

Second, defendant's case is more compelling than the father's case in *Miller* for another reason. That is, after the separation agreement was entered into defendant became responsible for the expenses of raising two children, his twin sons. Supreme Court rejected defendant's reliance on these expenses as follows: "[s]ince defendant was aware of his support obligations when he remarried and then fathered two additional children, it cannot be argued that the costs attendant to those children were unanticipated." Even assuming what seems doubtful— that defendant anticipated the birth of twins—Supreme Court

---

2. For example, in 2002 defendant paid $49,520 in nonbasic child support, including $15,000 for tuition and $31,000 for child care. In 2003, defendant paid approximately $26,400 in nonbasic child support, including $8,500 for tuition and $16,900 for child care. In the first nine months of 2004, defendant paid approximately $19,800 in nonbasic child support. To be sure, the separation agreement provides that defendant is not obligated to make any payments for child care after 2005. This eventual reduction in defendant's total obligations, however, does not affect the burden of either defendant's basic child support obligations or his total support obligations in or prior to 2005.

erred just the same. The issue is whether these expenses were unanticipated at the time the parties entered into the separation agreement (*see Merl,* 67 NY2d at 362). Regardless of whether defendant can fairly be blamed for remarrying and raising children with his new spouse, moreover, his infant sons are blameless and Supreme Court should not have been so dismissive of defendant's need to provide for them (*see Matter of Barrett v Barrett,* 281 AD2d 799, 803 [2001]).

In addition, defendant also was correct in asserting that increases, if any, in plaintiff's salary would support his motion (*see Rockwell v Rockwell,* 67 AD2d 892, 893 [1979]).

The dissent's statements about and critical commentary on morning television, however informed they may be, miss the point. To repeat it: the notion that the parties to the agreement anticipated the prolonged period of unemployment and the enormous reduction in salary that actually occurred makes no sense. The parties unquestionably both anticipated the possibility that defendant might lose the lucrative position he then held and addressed *some* of the possible consequences. But it makes no sense to suppose that the parties addressed *all* the possible consequences. The involvement of "respected" counsel in "extensive negotiations" does not make reasonable the notion that the parties intended, for example, that defendant would make basic child support payments of $33,600 and nonbasic support payments of $26,400 in a year in which he earned some $77,527 from all sources.

Finally, the dissent's effort to distinguish *Miller* is unpersuasive. First, the salary reduction in this case is even more substantial. Second, why the birth of defendant's twins is not a "profoundly significant development, economically and otherwise" is a matter the dissent does not explain. Even assuming, as the dissent does without explanation, that in *Miller* it was not "foreseeable" that one of the father's two children might move in with him, and even assuming, as the dissent apparently does in this case, that a "multiple birth" is foreseeable, the birth of defendant's twins is unquestionably a relevant circumstance, particularly given defendant's prolonged period of unemployment and huge reduction in salary. Third, in this case, unlike *Miller,* defendant relies as well on improvements in his wife's financial circumstances.

Accordingly, the order of the Supreme Court, New York County (Joan B. Lobis, J.), entered January 5, 2005, which, inter alia, denied defendant's motion for downward modifica-

tion of his child support obligation, should be reversed, on the law and the facts, without costs, the motion granted to the extent of directing a hearing on defendant's petition, and the matter remanded to Supreme Court.

MARLOW, J.P. (dissenting). Defendant's child support obligation was unambiguously set forth in the parties' separation agreement, which was incorporated, but not merged in their judgment of divorce. Thus, in order to be relieved of that defined obligation in the agreement, defendant had the burden of proving "that the agreement was not fair and equitable when entered into, or that an unanticipated and unreasonable change in circumstances has occurred resulting in a concomitant need" (*Merl v Merl*, 67 NY2d 359, 362 [1986]; *see also Matter of Boden v Boden,* 42 NY2d 210, 213 [1977]; *Colyer v Colyer,* 309 AD2d 9, 14-15 [2003]).

Defendant does not argue that the agreement was unfair or inequitable when executed. Rather, the changed circumstance defendant cites, in order to support his present motion for a downward departure from the child support obligation he voluntarily contracted for, is the loss of his long-standing lucrative position as a national television host and weatherman. That circumstance, however, was specifically anticipated and addressed in the agreement and, accordingly, affords no basis for the relief he now seeks (*id.*). Indeed, the agreement specifically provides that an "involuntary substantial decrease" in the husband's income includes "being terminated from his job." In addition to anticipating this specific circumstance, the parties also agreed to a fixed amount of child support if defendant's salary fell below a certain amount.* It is additionally worth noting that defendant's present salary agreement of $200,000 annually (exclusive of any benefits) also assures him yearly increases.

The majority maintains that the parties did not specifically anticipate that defendant would be unemployed for nearly two years, the extent of his eventual salary reduction, or his remarriage and the birth of twin sons; and thus the original terms of the agreement should no longer bind him. I respectfully dis-

---

* Notably, defendant's present child support obligation of $2,800 a month plus add-ons, as defined by the agreement, is more in line with what his obligation would be under the Child Support Standards Act than the requested downward modification to $414 a month of child support, an appropriate sum for a parent earning less than one sixth of defendant's present salary, exclusive of any benefits, the nature and extent of which he never disclosed to plaintiff. Moreover, defendant reaped a substantial benefit by paying only $4,000 a month in child support when his salary exceeded one million dollars a year.

agree. These parties, in fact, did anticipate the termination of defendant's employment, and they expressly provided for it in their agreement. Indeed, it should come as no surprise that, given the volatile and fickle nature of morning television, driven as it is by audience ratings and an excessive focus on programming for youthful viewers, the parties were prescient enough to anticipate that defendant's long, lucrative career (as, inter alia, one of only three national weathermen) could end abruptly, and they provided for this. Furthermore, it is uncontested in the record that "respected matrimonial counsel" represented each party and that "extensive negotiations were conducted prior to execution." Moreover, I do not find it so unusual—and certainly not unforeseeable under these particular circumstances—that defendant at his age would remarry and his wife could have a multiple birth.

I also view the majority's reliance on *Miller v Miller* (18 AD3d 629 [2d Dept 2005]) as misplaced because one of the two principal, changed circumstances which the father therein urged was that one of the parties' two children moved in with him, a factor not present in this case. It was a profoundly significant development, economically and otherwise, within that family unit and rendered Mr. Miller's salary reduction a much more compelling reason to hold a modification hearing. Indeed, the child's changed residence is a factor neither party had alleged was foreseeable, nor could they have credibly done so. Moreover, there is no indication in *Miller* that the agreement expressly anticipated specific future financial changes with corresponding specific monetary adjustments to accommodate those changes. Conversely, here, the changed employment circumstance advanced was expressly anticipated, and the parties had the foresight to provide for it with specific monetary accommodations in their agreement.

NARDELLI and GONZALEZ, JJ., concur with MCGUIRE, J.; MARLOW, J.P., and CATTERSON, J., dissent in a separate opinion by MARLOW, J.P.

Order, Supreme Court, New York County, entered January 5, 2005, reversed, on the law and the facts, without costs, defendant's motion for downward modification of his child support obligations granted to the extent of directing a hearing on his petition, and the matter remanded to Supreme Court.