OPINION OF THE COURT
John P. Colangelo, J.
In this postjudgment matrimonial action, plaintiff Mark R moves by order to show cause for a downward modification of his maintenance and child support required to be paid to the defendant Teresa P Defendant opposes the motion and has interposed a cross motion to dismiss and for attorney’s fees.
*687 Background
The parties were married in April 1987. They entered into the stipulation of settlement on October 7, 2004. The stipulation was incorporated but not merged into the divorce judgment filed and entered on November 17, 2004. The stipulation, by its terms, calls for plaintiff to pay spousal maintenance to defendant in the annual amount of $250,000 until 2017 and annual child support of $140,000; the amount of child support is to decrease as the parties’ children become emancipated (collectively the support payments).
Plaintiffs motion centers around one provision of the stipulation. Paragraph XIX (2) of the stipulation (hereinafter paragraph 2) pertains to the modification of defendant’s support payment obligations and provides as follows:
“2. Anything herein to the contrary notwithstanding, in the event of an involuntary, substantial, adverse change in the Husband’s income, including income produced by his assets (such as involuntary loss of employment), he shall have the right to make application to a court of competent jurisdiction, which must include a sworn statement of net worth, for an appropriate modification of child-related support and/or spousal maintenance obligations hereunder, and if granted, the parties’ Agreement shall be deemed amended to the extent of any relief afforded on such application. In the event that the Husband is granted a downward modification and the Husband’s income thereafter improve, the Wife shall have the right to make application to a court of competent jurisdiction for an upward modification of child support and/or maintenance, however, in no event shall the Husband be required to pay more than the amounts set forth in this Agreement.” (Emphasis added.)
At the time the stipulation was signed in 2004, plaintiff was a securities trader with annual income of $3.3 million. At the time of this motion, plaintiff was and remains employed as a securities trader; however, according to plaintiff, his compensation decreased to $651,000 in 2011, including capital gains, and plaintiff states that he anticipates earning no more than $251,000 in 2012. Plaintiff maintains that the decline in his annual compensation is due to changes in the securities industry, the economy and a general decline in securities sales volume, not to any lack of effort on his part.
*688 By his motion, plaintiff contends, in essence, that under paragraph 2, as long as he shows that he has suffered “an involuntary, substantial, adverse change in . . . income,” he may not only apply for, but is entitled to, a reduction in support payments, which would then be recalculated based upon his current income. That is, plaintiff maintains that under paragraph 2, the parties have provided a standard different from those set forth in the statute and case law to govern when and under what circumstances plaintiff may apply for and receive a reduction in support payments, and the court is bound by the parties’ imposed standard. Relying on Glass v Glass (16 AD3d 120 [1st Dept 2005]), plaintiff argues that to read paragraph 2 as limited to affording plaintiff no more than an opportunity to apply for support payment relief would impermissibly render paragraph 2 a nullity, since under the Domestic Relations Law and case authority, any party has the right to, at the very least, petition a court for support payment modification, be it in the nature of an increase or a decrease.
Conversely, defendant contends that paragraph 2 should be limited to what its terms expressly provide: a standard to determine when plaintiff may apply for, but not necessarily obtain, a support payment reduction. Since paragraph 2 is silent as to how the judicial determination of whether the payments should be reduced, and if so by how much, that standard may only be supplied by well recognized and prevailing law: in the case of child support, the amounts set forth in a stipulation must be paid unless such provision was unreasonable or inequitable when entered into — a situation which is not at issue herein — or if an unanticipated and unreasonable change in circumstances has occurred. (Matter of Boden v Boden, 42 NY2d 210 [1977]; Merl v Merl, 67 NY2d 359 [1986].) In the case of maintenance, in order to alter such payment terms, there must be a showing that extreme hardship would result should the originally agreed upon amounts remain in effect. (See Domestic Relations Law § 236 [B] [9] [b]; Matter of Alice C. v Bernard G.C., 193 AD2d 97 [2d Dept 1993].) Defendant argues that to interpret paragraph 2 in the manner plaintiff suggests would improperly import into the stipulation terms to which the parties never agreed. Defendant further maintains that the fact that such an interpretation may render the clause a dead letter is of no moment; parties are always free to agree upon terms that merely echo, but do not alter, the general practice.
Upon review of the extensive submissions, including learned memoranda submitted by both counsel, the court concludes that *689 defendant has the better of the argument, and that plaintiffs motion should be denied.
Discussion and Conclusions
The law is clear that, as a general rule, parties in a matrimonial action may agree to a less restrictive standard than that provided by prevailing law to govern the determination of whether support payments — be they child support or maintenance — may be reduced. (See e.g. Heller v Heller, 43 AD3d 999 [2d Dept 2007]; Glass v Glass, 16 AD3d 120 [2005].) By their stipulation, the parties herein sought to do so, but to an extent more circumscribed than plaintiff would have the court hold. In the instant case, the stipulation does provide that should plaintiffs income decline in the manner described in paragraph 2, he would have the “right to make application to a court” for a support payment modification. However, conspicuous by its absence in the stipulation is any standard to apply once the stated threshold sanctioning the application for a reduction has been met. As defendant maintains, this gap should only be filled by the standard generally invoked by the courts in assessing whether to deviate from the support payment regimen established by the parties’ agreement. The case law supports this approach.
For example, in Heller v Heller (43 AD3d 999 [2007]), the Second Department analyzed the reach of a stipulation provision that, similar to paragraph 2 herein, permitted the application for a reduction in child support, but was silent as to the standard to use to determine whether such an application should be granted. The Court held that while parties are generally “free ... to agree to different terms triggering a change in the obligations of the payor spouse” (id. at 1000), unless such an alternative standard is clearly spelled out in the agreement, the court will make that determination itself, using well established principles of whether a reduction in amount is warranted. Accordingly, a stipulation provision sanctioning only an application to the court should be limited to its terms.
As the Second Department held:
“The parties are free, however, to agree to different terms triggering a change in the obligations of the payor spouse, including the application of a standard other than substantial unanticipated and unreasonable change in circumstances as the basis for determining a modification application, provided that, in the case of child support, the children’s *690 personal right to receive adequate support is not adversely affected and public policy is not offended. The parties may, in doing so, establish a threshold which the payor spouse must meet before seeking such a reduction.
“Here, the stipulation of settlement did not entitle the plaintiff to a reduction in hisobligations if his income fell below the monetary threshold. The language of the stipulation and, particularly, the handwritten interlineation of the words ‘apply for, ’ make it clear that his entitlement in such circumstances is merely to request such relief, and that, absent an agreement by the parties, the amount of such relief, if any, would be determined by the court. Since the stipulation does not vary the standard by which that application is to be determined, the plaintiff was obligated, even upon satisfying the monetary threshold, to demonstrate a substantial unanticipated and unreasonable change in circumstances in order to establish his entitlement to a reduction.” (Id. at 1000-1001 [citations omitted; emphasis added]; see also e.g. Walsh v Walsh, 207 AD2d 394, 395 [2d Dept 1994] [“(t)he provision in the settlement which provided for renegotiation of the settlement’s support provisions in the event that the former husband’s earnings fell below $40,000 per year is nothing more than a triggering mechanism to occasion a review of the alimony award, and does not mandate an automatic reduction of the award”]; Matter of Studenroth v Phillips, 230 AD2d 247, 248 [3d Dept 1997]; Colyer v Colyer, 309 AD2d 9 [1st Dept 2003].)
Indeed, even cases cited by plaintiff tend to support this interpretation by making clear that only by an explicit agreement in their stipulation may the parties successfully substitute a different standard for support payment reduction for the well-worn standards established by statutory and case law. In Matter of Dallin v Dallin (225 AD2d 768 [1996]) — a Second Department case relied upon by plaintiff — the Court was inclined to permit a maintenance payment reduction based upon a standard that deviated from the statutory and case law norm, but only because the parties explicitly so provided in their stipulation.
In Dallin, the parties’ agreement stated that “ £[a]ny decrease in the Husband’s income below $300,000 shall entitle him to a *691 reduction in maintenance by agreement or application to a Court of competent jurisdiction’ (emphasis supplied).” (Id. at 769.) The Family Court below ignored this direction and held that the former husband was not entitled to a reduction in maintenance even if his income in fact fell below $300,000 per year. The Second Department reversed and remanded the case for further proceedings. The Court indicated that if the former husband established that his income had fallen below $300,000, he should receive some maintenance payment relief since “the agreement clearly provides that any decrease in the husband’s income below $300,000.00 ‘shall entitle him to a reduction in maintenance.’ ” (Id.) Accordingly, the Court remitted the case to the Family Court to determine whether the income threshold had been met and, if so, the extent of any decrease in the former husband’s maintenance obligations.
Conversely, in situations such as the instant case where the spousal agreement by its terms only furnishes a trigger mechanism which would permit an application for payment reduction — be it child support or maintenance — but fails to provide a standard which, if met, would mandate a reduction in payments, the courts prove to loathe to substitute such application standard for the general and long-standing legal principles and practice in determining whether such payments should in fact be reduced. As discussed above, Heller and related cases clearly so indicate. (See e.g. Colyer v Colyer, 309 AD2d 9, 16 [2003] [“absent the parties’ expression of a clear intention to dispense with the legal standard for modification of the support obligation or to substitute another specified standard, the legal standard applies”]; Walsh v Walsh, 207 AD2d 394 [1994].)
Indeed, to do otherwise would run afoul of the spirit as well as the letter of prevailing law, which militates against a change in the initially agreed upon level of child support unless “unforeseen,” “unanticipated and unreasonable change in circumstances” is shown {see Matter of Boden v Boden, 42 NY2d at 213), or in the case of maintenance, where a plain showing of extreme hardship to the payer is made. (Domestic Relations Law § 236 [B] [9] [b].) Courts have long applied these general standards to allow an adjustment of the child support or maintenance obligations only when, in light of the totality of the circumstances and taking into account all aspects of the parties’ current situation — as opposed to the situation that obtained at the time their stipulation was signed — the facts strongly militate in favor of such an adjustment. (See e.g. Merl v Merl, 67 NY2d *692 359 [1986]; Matter of Alice C. v Bernard G.C., 193 AD2d 97 [1993].)
The recent Second Department case on which plaintiff also relies — Martin v Martin (80 AD3d 579 [2011]) — is not to the contrary. Indeed, Martin reflects rather than contradicts this long-standing rule and thus buttresses rather than undermines defendant’s contentions. In Martin, the parties’ stipulation of settlement concerning support payments acknowledged that defendant suffered from multiple sclerosis and that the child support and maintenance obligations were “being based upon the HUSBAND being physically capable of earning . . . ($150,000) . . . per year.” (Id. at 580.) Significantly, the stipulation did not state that the husband’s physical condition would be the sole criterion in determining whether support payments should be reduced if his condition declined, and the Court did not so hold. Rather, the Court remanded the case and ordered a hearing “on the issues of whether a downward modification of the defendant’s maintenance and child support obligations is appropriate.” (Id. at 581.)
Significantly, the Martin Court did not expressly limit the factors that the lower court should consider to the one specifically mentioned in the stipulation. Indeed, a fair reading of Martin would indicate that while defendant husband’s loss of income due to progression of his affliction may be one factor — and perhaps a major factor — for the lower court to consider, that court was charged with considering all circumstances that pertain to the decision of whether or not to decrease child support — because of an unanticipated or unreasonable change in circumstances — or maintenance — due to the extreme hardship. That is, similar to the instant case, the Martin Court recognized that the parties clearly contemplated by their stipulation that should an application to decrease support payments be made, the reviewing court would be charged with considering the factor explicitly mentioned by the parties — in Martin the husband’s decrease in income due to his disease — but not to the exclusion of other pertinent elements. Instead, such a development as mentioned in the parties’ agreement would be but one of a host of factors to be considered and weighed by the court in applying the traditional and overarching legal standards for child support and maintenance modification.
Parenthetically, the court notes that plaintiff’s reliance on Glass v Glass (16 AD3d 120 [2005]) to the effect that the interpretation of paragraph 2 urged by defendant would be improper *693 because, in light of the fact that a party is always entitled to petition a court for a change in support payment obligations, it would render the pertinent provision meaningless, proves too much. Aside from the fact that parties are generally free to and often do agree to terms that merely reflect prevailing law, paragraph 2, when analyzed, is not without benefit to plaintiff. Paragraph 2 alerts the court to factors that the parties deem important in assessing any payment reduction request. In addition, the provision, if followed and if based upon a supportable claim for income reduction or increase, effectively insulates the party applying for such a modification of support payments from a claim that his or her application was frivolous and therefore should result in sanctions or attorney’s fees. By including paragraph 2 in the stipulation, either party may make a modification application with less fear of being charged with paying the opposing party’s counsel fees if unsuccessful. Indeed, as the motion papers herein demonstrate, this is not a mere academic concern; defendant has submitted a cross motion against plaintiff for attorney’s fees. Since paragraph 2 is not superfluous or irrelevant, the holding of Glass is inapposite.
Modification of Plaintiffs Support Obligations
Applying the general legal standards to determine whether a downward modification of support payments is warranted herein, it is clear that plaintiff has not adduced sufficient facts to require a hearing with respect to either child support or maintenance payment reduction. (See Reback v Reback, 93 AD3d 652 [2d Dept 2012].) As far as maintenance is concerned, as noted above, in order to succeed on an application to reduce such payments, the moving party must adduce facts sufficient to show that a failure to grant such a reduction would result in an “extreme hardship.” (See Beard v Beard, 300 AD2d 268, 268 [2d Dept 2002]; Matter of Alice C. v Bernard G.C., 193 AD2d 97 [1993].) Plaintiff has manifestly failed to meet that burden, and for good reason: his statement of net worth, submitted with his motion papers, indicates that he has over $5.5 million in liquid assets. Thus, while continuing the maintenance schedule set forth in the agreement may prove somewhat burdensome to plaintiff in light of his alleged decrease in income, it can scarcely be described as an “extreme hardship.”
Plaintiffs éffort to reduce his child support obligations as set forth in the stipulation proves equally unavailing. While plaintiff does allege that his income has decreased significantly, he offers no evidentiary facts that would lead this court to *694 conclude that he has actively and diligently sought more remunerative employment. Indeed, plaintiff failed to indicate that he has even applied for other, more lucrative positions. Instead, plaintiff sets forth only generalized assertions regarding the state of the securities market, the economy, the disadvantages faced by small brokerage firms, and the like. He does not adduce evidentiary facts that he has looked for work at different, perhaps larger, brokerage firms, made efforts to seek out new clients to replace those lost, or sought additional work to supplement his income, all of which lead to the permissible conclusion that his current economic situation, and failure to improve it, is at least partially of his own making. Under similar circumstances, courts have not hesitated to deny a motion to decrease child support payments even without a hearing because, as a matter of law, no substantial, “unanticipated and unreasonable change in circumstances” has been shown. (Matter of Boden v Boden, 42 NY2d 210, 213 [1977]; Reback v Reback, 93 AD3d 652 [2012] [the Second Department affirmed the denial of an evidentiary hearing to the party moving for downward modification of support obligations, holding that the moving party failed to present any evidence that the asserted reduction in income was a result of anything other than the party’s own self-inflicted hardship]; Matter of Grettler v Grettler, 12 AD3d 602, 603 [2d Dept 2004] [movant’s lack of substantial efforts to gain employment precluded granting an evidentiary hearing on the issue of support payment modification].)
Moreover, the fact that plaintiff has over $5.5 million in liquid assets also weighs against a reduction in child support. The law is clear that a parent’s assets and financial resources, in addition to his or her income, should be taken into account in determining child support obligations and whether such obligations should be modified. (See Domestic Relations Law § 240 [1-b] [f| [1]; Family Court Act § 413 [1] [f] [1]; Matter of Flanigan v Smyth, 90 AD3d 1107 [3d Dept 2011].) Here, plaintiffs current, albeit reduced, income in addition to his $5.5 million in liquid assets proves more than sufficient to meet his child support obligations at the levels specified in the stipulation. (See Matter of Flanigan v Smyth, 90 AD3d 1107 [2011] [the Court denied an application by an unemployed father with a $2 million investment portfolio to reduce his support obligations, holding that he had sufficient resources to meet such obligations].)
Accordingly, plaintiffs motion to modify his child support and maintenance obligations is denied, without a hearing.
*695 Attorney’s Fees
Defendant interposed a cross motion requesting the award of counsel fees primarily on the ground that she is the less wealthy spouse. Domestic Relations Law § 237 (a) vests the Supreme Court with discretion to make an award of reasonable counsel fees as justice requires, based upon the equities and circumstances of the case. As the Court of Appeals held in DeCabrera v Cabrera-Rosete (70 NY2d 879, 881 [1987]), “[I]n exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties’ positions.” (See also Morken v Morken, 292 AD2d 431, 431 [2d Dept 2002] [“An evaluation of what constitutes reasonable counsel fees is a matter that is generally left to the sound discretion of the trial court . . . which is often in the best position to judge those factors integral to the fixing of counsel fees”].)
Defendant’s income is substantially lower than plaintiff’s income. However the stipulation specifically gives plaintiff the right to apply for downward modification of his support obligations. Moreover, there is nothing in plaintiffs motion papers to suggest that his application was frivolous or made in bad faith. Plaintiffs income did substantially decrease, and although he failed to maintain that he has made efforts to augment this reduced income, the decrease appears to be involuntary. Accordingly, notwithstanding the income disparity between the parties, it would be unfair to award counsel fees under these circumstances, when the stipulation specifically provides for such a modification application.
Conclusion
By reason of the foregoing, plaintiffs motion for a downward modification of support payments is denied in all respects, and defendant’s cross motion for attorney’s fees is denied in all respects.